### NORTHEAST WOMEN'S CENTER, INC.

v.

**Michael McMONAGLE, Dennis Sadler, Deborah Baker, Thomas Herlihy, John Stanton, Anne Knorr, Robert Moran, Joseph P. Wall, Roland Markum, Howard Walton, Henry Tenaglio, Stephanie Morello, Annemarie Breen, Ellen Jones, Susan Silcox, Paul C. Armes, Walter G. Gies, John J. O'Brien, Patricia Walton, Kathy Long, Helen Gaydos, Donna Andracavage, Juan Guerra, Linda Hearn, John Connor, Margaret Caponi, Mary Bryne, Linda Corbett, Thomas McIlhenny, Pasquale Varallo, and Patricia McNamara.**

Civ. A. No. 85–4845.

United States District Court, E.D. Pennsylvania.

May 8, 1987.

---

Edmund A. Tiryak, Philadelphia, Pa., for plaintiff.

Charles F. Volz, Philadelphia, Pa., Theresa M. Connolly, Jenkintown, Pa., Joseph Stanton, Ardmore, Pa., Thomas Short, Norristown, Pa., for defendants.

BENCH OPINION

JAMES McGIRR KELLY, District Judge.

The plaintiff Northeast Women's Center, Inc. ("Center") brought this civil action against thirty-one [1] anti-abortion protesters who have participated in various protest

---

1. The amended complaint originally named forty-two persons as defendants in this action. Prior to trial, the plaintiff dismissed five persons. During argument on this motion, the plaintiff dismissed six other persons. There are now thirty-one persons remaining as defendants.

activities outside and inside the Center. The plaintiff seeks money damages and injunctive relief under four theories: a federal claim under the Sherman Antitrust and Clayton Acts, 15 U.S.C. §§ 1, 15; a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964; a pendent claim for trespass; and a pendent claim for intentional interference with contractual relations. Following nine days of testimony during which the jury viewed over two hours of video tape and heard from ten plaintiff witnesses, the Center rested. Now before the court are the defendants' motions for directed verdicts.

■ Under Federal Rule of Civil Procedure 50(a), the trial court must direct the verdict if, under the applicable law, there can be only one reasonable conclusion as to which party should prevail. *See Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943). The mere fact that a scintilla of evidence supports the plaintiff's case will not defeat a motion for directed verdict. *See Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872). Instead, the court must ask "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making this inquiry, the court must leave credibility determinations, the weighing of the evidence, and the drawing of proper inferences to the jury; the plaintiff's evidence is taken as true and all justifiable inferences are drawn in plaintiff's favor. *Id.* 106 S.Ct. at 2513.

Due to the number of the claims in this case and the disjointed presentation of the evidence, the court decided it was necessary to conduct an extended hearing on the defendants' motions. Following four hours of argument and a complete review of the evidence, the court concludes that the defendants' motions will be granted in part and denied in part. The specific rulings and their explanations follow.

## I. SHERMAN ANTITRUST ACT CLAIMS

As set forth in the complaint, the plaintiff contends that the defendants conspired to restrain trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Amended Complaint at ¶ 84. Specifically, the plaintiff argues that the manifest intent of the defendants' protest activities was to destroy the Center's abortion procedure business.[2] Accordingly, the plaintiff asserts that it is entitled to treble damages pursuant to 15 U.S.C. § 15.

Section 1 of the Sherman Act declares that "[e]very ... conspiracy, in restraint of trade or commerce among the several States ... is ... illegal...." 15 U.S.C. § 1 (1982). Although, if interpreted literally, Section 1 would prohibit *any* agreement in restraint of trade, the courts have recognized that only those agreements which unreasonably restrain trade or commerce violate the Sherman Act.[3] *See Weiss v. York Hosp.*, 745 F.2d 786, 817 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

■ A year and a half ago, in finding that the plaintiff's antitrust count survived a motion to dismiss, the court acknowledged that the dissimilarity between the plaintiff's antitrust theory and those claims ordinarily held violative of the Sherman Act was disturbing. *Northeast Women's Center, Inc. v. McMonagle*, 624 F.Supp.

---

**2.** According to testimony at trial (taken, for purposes of this motion, as truth) abortion procedures account for approximately 35% of the Northeast Women's Center's clients.

**3.** In addition to this case-by-case "rule of reason" analysis, the courts have adopted a separate "per se illegal" rule that is applied to certain business practices that are definitionally condemned. *See Weiss v. York Hosp.*, 745 F.2d 786, 817–18 (3d Cir.1984) *cert. denied*, 470 U.S.

1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). This *per se* rule is limited to several judicially created categories that are not implicated in this case. *See Tunis Bros. Co. v. Ford Motor Co.*, 763 F.2d 1482, 1489–90 & n. 14 (3d Cir.1985) (*per se* categories are horizontal and vertical price fixing, resale price maintenance, group boycotts, trying arrangements, and reciprocal dealing), *vacated on other grounds*, 475 U.S. 1105, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986).

736, 740 (E.D.Pa.1985). Although not conclusive on the question of whether or not the Sherman Act was applicable, "this essential dissimilarity ... [did] constitute a warning against treating the defendants' conduct as though it amounted to a common-law trade restraint." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136–37, 81 S.Ct. 523, 528–29, 5 L.Ed.2d 464 (1961). Consequently, the court expressly cautioned the plaintiff that "[p]roof of injury to the plaintiff's business will be deemed insufficient absent further proof that such injury amounted to an unreasonable restraint on trade." *Northeast Women's Center, Inc. v. McMonagle,* No. 85–4845, slip op. at 7 (E.D. Pa. Feb. 12, 1987) [Available on WESTLAW, DCT database]. The plaintiff's case now over, it is clear to the court that its warning has gone unheeded. The plaintiff has rested its claim for an antitrust recovery entirely on proof that the defendants seek to destroy its abortion business. As this court forewarned the plaintiff on February 12, 1987,[4] this proof alone is not proof enough.

The goal of the federal antitrust laws generally is the enhancement of competition. *Martin B. Glauser Dodge Co. v. Chrysler Corp.,* 570 F.2d 72, 81 (3d Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978). The goal of Section 1 specifically is the prevention of any diminution of competition in the marketing of goods or services. *Kalmanovitz v. G. Heileman Brewing Co.,* 769 F.2d 152, 156 (3d Cir.1985). Although an individual business has standing to sue under the Sherman Act for injuries it sustained to its own business, the antitrust laws were not enacted simply to protect such discreet, individual business interests. "The antitrust laws were enacted for the protection of *competition,* not competitors." *Bruns-*

wick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (emphasis added) (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)).

Accordingly, an antitrust plaintiff is required to prove more than just its business' injury. To recover under Section 1, a plaintiff must prove that the defendants' conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets.[5] *Tunis Bros. Co. v. Ford Motor Co.,* 763 F.2d 1482, 1489 (3d Cir.1985), *vacated on other grounds,* 475 U.S. 1105, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986); *Martin B. Glauser Dodge Co.,* 570 F.2d at 81. *Accord Seaboard Supply Co. v. Congoleum Corp.,* 770 F.2d 367, 375 (3d Cir.1985). The plaintiff has the burden of demonstrating that the defendants' conspiracy, in some substantial way, "either did or could affect interstate commerce by controlling market prices, imposing undue limitations on competitive conditions, or unreasonably restricting competitive opportunity." *Sitkin Smelting & Refining Co. v. FMC Corp.,* 575 F.2d 440, 447 (3d Cir.), *cert. denied,* 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176 (1978). *Accord Apex Hosiery Co. v. Leader,* 310 U.S. 469, 493 n. 15, 60 S.Ct. 982, 992 n. 15, 84 L.Ed. 1311 (1940) (Sherman Act designed to prevent restraints of trade which have significant effect on business competition).

Competition within a particular industry is not necessarily injured merely because one competitor in the industry sustains a loss of business. An injury to *competition* within an industry may be proven by an appreciable reduction in the number of competitors or by some other outward sign of adverse effects on competitive con-

---

4. *Northeast Women's Center, Inc. v. McMonagle,* No. 85–4845, slip op. at 7 (E.D.Pa. Feb. 12, 1987) [Available on WESTLAW, DCT database] (memorandum and order denying defendants' motion for summary judgment).

5. To sustain a cause of action under § 1 in this circuit, a plaintiff must prove (1) that the defendants conspired among each other; (2) that the conspiracy produced adverse, anticompeti-

tive effects within relevant product and geographic markets; (3) that the objects and the conduct pursuant to the conspiracy were illegal; and (4) that the plaintiff was injured as a proximate result of that conspiracy. *Martin B. Glauser Dodge Co. v. Chrysler Corp.,* 570 F.2d 71, 81 (3d Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978).

ditions. "[B]ut adverse impact is simply not shown by a loss of profits, or even by the total elimination of one competitor." *Robert's Waikiki U–Drive, Inc. v. Budget Rent–A–Car Systems, Inc.,* 491 F.Supp. 1199, 1213 (D. Hawaii 1980), *aff'd,* 732 F.2d 1403 (9th Cir.1984). An antitrust plaintiff must demonstrate that the defendants' conduct had "some anti-competitive effect beyond the plaintiff's own loss of business." *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 450 (9th Cir.1979); *Gough v. Rossmoor Corp.,* 585 F.2d 381, 386 (9th Cir.1978), *cert. denied,* 400 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). Thus, to prove an antitrust violation in this case, the plaintiff had to demonstrate an actual anti-competitive impact on the providing of abortion services within the relevant market area. *See Tunis Bros. Co.,* 763 F.2d at 1490.

The plaintiff here has introduced no such evidence.[6] There has been no evidence even suggesting that the defendant's protest activities at the Center have diminished competition within the plaintiff's market: no evidence of an appreciable reduction in the number of competitors, no evidence of any other outward sign indicating an adverse effect on competitive conditions. The plaintiff has made no attempt to define the relevant service market allegedly affected, nor has the plaintiff characterized or quantified the alleged anti-competitive damage. The plaintiff has failed to even establish for the jury who all its competitors are.

The plaintiff has also been unable to demonstrate that it, the party bringing the antitrust action, has sustained any revenue damage. The plaintiff has deleted from its prayer for relief any claim based on lost revenues. It has introduced no statistics indicating a fall in either gross income or net profits. It has put on no witnesses to testify as to lost good will or customer confidence. In fact, the plaintiff's witness conceded on cross-examination that no patient, arriving on a day when protesters were present, was deterred from having an abortion or even delayed in having one a full day.

The plaintiff in this case sought to make new law, pursuing an antitrust recovery through an unorthodox application of the Sherman Antitrust Act. Due to the apparent complexity of the facts and the imprecision in the complaint, the court allowed the plaintiff the benefit of the doubt and permitted the Center to proceed with its proof.[7] However, the mere fact that the plaintiff attempts a novel approach does not afford it special treatment under the antitrust laws. It is bound by the same elements of proof as any other antitrust plaintiff; the requirements for recovery are neither enhanced nor relaxed.

■ Having heard the plaintiff's case, the court concludes that the plaintiff has failed to state a prima facie claim under 15 U.S.C. § 1 as defined by the elements of that cause of action. Therefore, the defendants' motions for directed verdicts will be granted as to the plaintiff's antitrust count. This ruling in no way circumscribes the jury's authority to award damages against the defendants under the plaintiff's remaining three theories for recovery, nor does the ruling affect the court's ability to grant appropriate injunctive relief under the remaining three theories. Finding that the plaintiff has failed to meet its burden of proof, the court is not called upon to address the question of whether the First Amendment would have denied the plaintiff a recovery in the event it had estab-

6. *Cf. Klor's v. Broadway–Hale Stores, Inc.,* 359 U.S. 207, 209, 79 S.Ct. 705, 707, 3 L.Ed.2d 741 (1959) (evidence at trial indicated that plaintiff had been seriously handicapped in its ability to compete and had been caused great loss of profits, goodwill, reputation and prestige).

7. *Cf. Barr v. National Right to Life Comm., Inc.,* 1981–82 Trade Cas. (CCH) ¶ 64,315 (M.D.Fla. July 27, 1981). *Cf. also Sitkin Smelting & Refin-*

*ing Co. v. FMC Corp.,* 575 F.2d 440, 447 (3d Cir.) ("Conduct not within the scope of the [Sherman Antitrust Act] is not made into an antitrust violation by accompanying conduct which is reprehensible under some moral or ethical standard or even illegal under some other law."), *cert. denied,* 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176 (1978).

lished an antitrust cause of action.[8] Consequently, no opinion on this issue is expressed.

## II. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT CLAIMS

The plaintiff's second count alleges that the defendants, through a pattern of racketeering activity, injured the Center in violation of the federal RICO statute. For predicate acts, the plaintiff lists robbery and Hobbs Act extortion, both of which qualify as racketeering activity pursuant to 18 U.S.C. § 1961(1).

The declared purpose of Congress in enacting the RICO statute was "to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *United States v. Turkette*, 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981). In addition to its criminal penalties, the statute provides a private cause of action to recover treble damages for injuries sustained as a result of criminal racketeering activity. *See* 18 U.S.C. § 1964(c) (1982).

As its application in this action clearly evidences, however, RICO has evolved into a creature much different from that envisioned by its creators. *See generally* Comment, *What Have They Done to Civil RICO: The Supreme Court Takes the Racketeering Requirement Out of Racketeering*, 35 Am.U.L.Rev. 821 (1986). Instead of a weapon for derailing the activities of "the archetypal, intimidating mobster", the RICO statute has become a method for redressing virtually all means of wrongdoing. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985). When recently given the opportunity to refocus RICO, the United States Supreme Court declined to do so. "[T]his defect—if defect it is—is inherent in the statute as written, and its correction must lie with Congress." *Id.* Consequently, it cannot be said that RICO's application in this case is legally precluded.

The RICO statute makes four types of conduct illegal.[9] As to each type, the plaintiff must establish the existence of an "enterprise", an ongoing organization—composed of members functioning as a continuing unit—that has "an existence separate and apart from the pattern of [racketeering] activity in which it engages." 18 U.S.C. § 1962 (1982). *See United States v. Local 560 of the Internt'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers*, 780 F.2d 267, 290 (3d Cir.1985). The plaintiff must also establish a pattern of racketeering activity composed of the commission of at least two predicate acts of robbery or extortion within a ten-year period. 18 U.S.C. § 1962 (1982). *See* 18 U.S.C. § 1961(5) (1982). The court first turns to the plaintiff's robbery and extortion allegations.

Under Pennsylvania law,[10] a person is guilty of robbery if, in the course of committing a theft, he physically takes or removes property from the person of another by force however slight. 18 Pa. Cons. Stat. Ann. § 3701(a)(1)(v) (Purdon 1983). The plaintiff argues that it has proven that, on August 10, 1985, a number of defendants entered the Center and, through the use of physical force, removed property from the

---

**8.** The First Amendment does limit the application of the Sherman Act. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Whether the First Amendment would have restricted or precluded a damage award in this case is unaddressed by the court.

**9.** *See* 18 U.S.C. § 1962(a), (b), (c), & (d) (1982). As the plaintiff explained during the directed verdict hearing, a RICO recovery is sought only under § 1962(c) and (d).

**10.** The defendants assert that the appropriate definition of robbery for RICO purposes is that adopted by the State of New York. *See United States v. Nedley*, 255 F.2d 350, 355 (3d Cir.1958). The defendants' case relates to robbery under the Hobbs Act, not the state law robbery the plaintiff alleges here. Moreover, the court finds no material differences between the Pennsylvania and New York formulations.

plaintiff's offices. The plaintiff further argues that, having used force against its employees in the unlawful removal of its property, the defendants committed a robbery.

A person violates the Hobbs Act, 18 U.S.C. § 1951(b)(2) (1982), if he induces his victim to part with property through the use of fear and, in so doing, adversely affects interstate commerce. *See Local 560*, 780 F.2d at 281. The Hobbs Act applies not only to completed extortions, but to attempted extortions and conspiracies to commit extortion as well. 18 U.S.C. § 1951(a) (1982). For Hobbs Act purposes, the term "property" includes intangible property interests such as the right to make business decisions free from wrongfully imposed outside pressures. *See Id.* at 281–82.

■ The plaintiff argues that it has established prima facie evidence that the defendants conspired to and did attempt three separate extortions. According to the plaintiff's theories, the defendants, through the use of fear instilled by their protest activities, attempted and conspired to induce (1) the Center, (2) its employees, and (3) its patients to part with intangible property interests. Specifically, the defendants allegedly attempted and conspired to extort from the Center its property interest in continuing to provide abortion services, from the employees their property interest in continuing their employment at the Center, and from the patients their property interest in entering into a contractual relationship with the Center.[11]

As noted above, the plaintiff rests its claims of extortion on characterizing the defendants' protest activities as violative of the Hobbs Act. However, in assessing the applicability of the Hobbs Act to the defendants' conduct, the precepts of the Constitution must be kept in mind. Resting on the "highest rung" in the heirarchy of First Amendment values, free speech is

---

**11.** The plaintiff's extortion theories necessarily raise a novel question regarding the predicate acts requirement of RICO: if the plaintiff can demonstrate that it was injured as a result of the defendants' conduct, must it be the *direct* victim of the conduct to have standing? In this case, the plaintiff is only the victim of the alleged extortionate acts under the first theory. Under the second theory, the employees are the victims and, under the third theory, the patients are the victims. But the plaintiff argues that, from all three alleged extortions, it sustained a compensable injury to its business. Even though it was not the direct victim under theory two or three, the plaintiff seeks to send these alleged extortions to the jury as predicate acts for its RICO recovery.

The language of the statute makes no requirement that the plaintiff be the victim of the predicate acts so long as the plaintiff is injured as a result of the acts. Section 1964(c) establishes a civil remedy for *"[a]ny* person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (1982) (emphasis added). Under § 1962(c) and (d), the focus is directed at the defendant's conduct rather than the plaintiff's injury. The provisions make no mention of who must be victimized in order to recover. Similarly inconclusive are the definition provisions. Section 1961(1) defines "racketeering activity" as *"any* act or threat" involving robbery or extortion. 18 U.S.C. § 1961(1) (1982) (emphasis added). Section 1961(5) defines "pattern of racketeering activity" as "two acts of racketeering activity" without regard to victim.

The Supreme Court's two recent decisions on the statute suggest that the Act be interpreted broadly and that Congress be left to restrict any oberbreadth. In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Court rejected the Second Circuit's requirement that a RICO plaintiff prove a "racketeering injury" separate and distinct from the harm it sustained by the predicate acts themselves. The Court discarded the limitation by observing that the statute makes no such requirement. *Id.*, 105 S.Ct. at 3286. In *American Nat'l Bank & Trust Co. v. Haroco, Inc.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), the Court rejected a similar requirement by the Seventh Circuit with an admonition that the requirement "suffers from the same defects as the amorphous and unfounded restrictions on the RICO private action we rejected in [Sedima]." *Id.* 105 S.Ct. at 3292.

In light of the Supreme Court's direction that the Act be read as written, this court has canvassed the statute for a requirement that the RICO plaintiff be the direct victim of the alleged predicate acts. The court has found no such requirement. Moreover, the court notes that the plaintiff has offered evidence that irrespective of the actual victim, the Center has experienced a resultant injury. Consequently, the alleged extortionate conduct directed to the employees and the patients will go to the jury as predicate acts in support of the plaintiff's RICO claim.

accorded special protection under the Constitution. *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). It guarantees "the right of every citizen to reach the minds of willing listeners," *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 655, 101 S.Ct. 2559, 2568, 69 L.Ed.2d 298 (1981), in order to assure the "unfettered interchange of ideas for the bringing about of political and social changes," *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957).

Attempts to persuade another to action are clearly within the scope of the First Amendment. *Thomas v. Collins*, 323 U.S. 516, 537, 65 S.Ct. 315, 326, 89 L.Ed. 430 (1945). The fact that the defendants' speech was intended to persuade patients to forego their abortions or employees to leave their employment at an abortion-providing clinic does not, in itself, corrupt the speech nor diminish its protection under the Constitution. *See Thornhill v. Alabama*, 310 U.S. 88, 99, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940). Such pure speech activities cannot support a claim of extortion. Similarly, peaceful picketing, leafletting, and demonstrating enjoy the same freedom of expression. *E.g., Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). That this expression was designed to have an "offensive" or "coercive" effect is of little significance provided that the manner of expression retained its peaceful nature. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982).

The First Amendment will not, however, offer a sanctuary for violence. "No federal rule of law restricts a State from imposing tort liability for business losses that are caused by violence and by threats of violence." *Claiborne Hardware Co.*, 458 U.S. at 916, 102 S.Ct. at 3427. The forcible, unauthorized entry into the Cen-

ter's facilities is not protected conduct. Neither can the breaking of an automobile tail light or the inflicting of bodily injury scurry behind the First Amendment for refuge. As to these activities, the plaintiff will encounter no constitutional hurdle.

But to establish extortionate conduct, the plaintiff must offer proof of such unlawful activity. It must prove more than the offensive or coercive nature of a defendant's protest activities. It also must prove more than a defendant's intent that the Center cease providing abortions, that its employees resign their abortion-related posts, or that its patients cancel their appointments. Only non-peaceful activity, falling outside the parameters of protected conduct, can form the basis of a claim for extortion.

Having reviewed the plaintiff's predicate act allegations, the court now assesses the plaintiff's success in stating a prima facie case for a pattern of racketeering activity. With respect to robbery, the plaintiff alleges only one incident occurring on August 10, 1985. The plaintiff has introduced evidence that on that date the Center was entered by defendants Joseph P. Wall, Roland Markum, Howard Walton, Henry Tenaglio, Stephanie Morello, Annemarie Breen, Ellen Jones, Susan Silcox, Paul C. Armes, Walter G. Gies, John J. O'Brien, and Kathy Long. The plaintiff has also presented evidence that those entries were unauthorized. Further, the plaintiff has brought in evidence suggesting that, following those entries, certain medical tubes, bottles, and knobs were missing. The court finds this evidence sufficient to state a prima facie case of robbery as to defendants Joseph P. Wall, Roland Markum, Howard Walton, Henry Tenaglio, Stephanie Morello, Annemarie Breen, Ellen Jones, Susan Silcox, Paul C. Armes, Walter G. Gies, John J. O'Brien, and Kathy Long.

With regard to the extortion allegations, there is evidence before the jury of four unauthorized entries into the Center's facilities.[12] This activity does not con-

---

12. The plaintiff also claims that a prima facie case for extortion has been stated with respect

to those defendants who have participated in protest activities at the homes of Center employ-

stitute protected First Amendment expression. The plaintiff's evidence intimates that patients and employees present during those entries were placed in fear by the nature and manner of the incidents. There is also evidence that, if believed and taken in the totality of the attendant circumstances, would suggest that the occurrence of these entries would cease if the Center surrendered its abortion-providing services. The court finds that this evidence states a prima facie case for extortion as to the following defendants: Michael McMonagle, Dennis Sadler, Deborah Baker, Thomas Herlihy, Anne Knorr, Robert Moran, Joseph P. Wall, Roland Markum, Howard Walton, Henry Tenaglio, Stephanie Morello, Annemarie Breen, Ellen Jones, Susan Silcox, Paul C. Armes, Walter G. Gies, John J. O'Brien, Patricia Walton,[13] Kathy Long, Helen Gaydos, Donna Andracavage, Juan Guerra, Margaret Caponi, Mary Bryne, Linda Corbett,[14] Thomas McIlhenny, and Patricia McNamara.

■ A pattern of racketeering activity requires the commission of two predicate acts within a ten-year period. 18 U.S.C. § 1961(5) (1982). In this case, the plaintiff alleges four predicate acts: the August 10 robbery, the extortion of the Center, the extortion of its employees, and the extortion of its patients. The "pattern" requirement is met only as to those defendants who have been involved in at least two of these four acts. The court has earlier concluded that for each defendant who entered

the Center's offices,[15] there was sufficient evidence to go to the jury on each of the three extortions. Consequently prima facie evidence of a pattern of racketeering activity has been presented with respect to: Michael McMonagle, Dennis Sadler, Deborah Baker, Thomas Herlihy, Anne Knorr, Robert Moran, Joseph P. Wall, Roland Markum, Howard Walton, Henry Tenaglio, Stephanie Morello, Annemarie Breen, Ellen Jones, Susan Silcox, Paul C. Armes, Walter G. Gies, John J. O'Brien, Patricia Walton, Kathy Long, Helen Gaydos, Donna Andracavage, Juan Guerra, Margaret Caponi, Mary Bryne, Linda Corbett, Thomas McIlhenny, and Patricia McNamara.

The plaintiff's pattern evidence now defined, the court next turns to the two provisions of the RICO statute under which the plaintiff seeks its recovery. To state a violation of 18 U.S.C. § 1962(c), the plaintiff must prove that a defendant, who was associated with or employed by the enterprise, conducted or participated in the activities of the enterprise by personally committing two acts of robbery or extortion. 18 U.S.C. § 1962(c) (1982). The court concludes that, considering the evidence of enterprise in the case, the jury is entitled to deliberate the claims under § 1962(c) that apply to each defendant for which a pattern of racketeering activity has been established. As listed above, these defendants are Michael McMonagle, Dennis Sadler, Deborah Baker, Thomas Herlihy, Anne Knorr, Robert Moran, Joseph P. Wall, Ro-

---

ees. This contention the court does not accept. The plaintiff has directed the court's attention to no statute or municipal ordinance making such activities at private residences unlawful. Moreover, the uncontradicted evidence before the jury reveals that no enforceable judicial order was in effect at the time of the home picketing restricting such activity. Consequently, because there were no time, place, and manner limitations on the defendants and because the plaintiff has introduced no evidence that the picketing was otherwise unlawful, this picketing cannot, consistent with the First Amendment, constitute evidence of extortion. *E.g., Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

**13.** No evidence was introduced placing Patricia Walton inside the Center at any time. Consequently, she cannot be held liable as a trespass-

er. However, evidence was introduced that she "blockaded" the front door of the Center. In light of the extortion discussion set forth above, the court will allow the plaintiff's extortion claim against Ms. Walton to go to the jury.

**14.** As with Ms. Walton, Linda Corbett was not placed inside the Center at any time. However, there was evidence that she blocked the path in front of a physician's car while the physician was attempting to arrive at work. Also, there was evidence that on June 28, 1986 Ms. Corbett "barricaded" the only open entrance into the Comly Road parking lot. On the weight of this evidence, the claim against Ms. Corbett will go to the jury.

**15.** Patricia Walton and Linda Corbett are also included here for the reasons set forth on footnotes 12 and 13.

land Markum, Howard Walton, Henry Tenaglio, Stephanie Morello, Annemarie Breen, Ellen Jones, Susan Silcox, Paul C. Armes, Walter G. Gies, John J. O'Brien, Patricia Walton, Kathy Long, Helen Gaydos, Donna Andracavage, Juan Guerra, Margaret Caponi, Mary Bryne, Linda Corbett, Thomas McIlhenny, and Patricia McNamara. The claims against the other defendants, John Stanton, Linda Hearn, John Connor, and Pasquale Varallo, are insufficient and their verdicts under § 1962(c) must be directed.

■ The plaintiff also seeks a RICO recovery under 18 U.S.C. § 1962(d) which declares it unlawful for any person to conspire to violate § 1962(c). 18 U.S.C. § 1962(d) (1982). From this court's reading of the law in this area, there are at least two legal concerns that encumber the plaintiff's right to a full recovery under its § 1962(d) theory. First, by its terms, the RICO conspiracy provision applies only to those defendants who conspire to further the activities of the enterprise through the commission of two racketeering acts. As a consequence, to fall within the scope of the conspiracy provision in this case, a defendant charged under § 1962(d) must be shown to have conspired intentionally, not just to trespass inside the Center's offices, but also to commit two acts of robbery or extortion.

Second, the Free Assembly Clause of the First Amendment places a heavy burden on the plaintiff's attempt to impose conspiracy liability. The Supreme Court has recognized that "the practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process," and that "by collective effort individuals can make their views known, when, individually, their voices would be faint or lost." *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley*, 454 U.S. 290, 294, 102 S.Ct. 434, 436, 70 L.Ed.2d 492 (1981). Accordingly, liability imposed for one's involvement with others—"guilt *for*

association"—conflicts sharply with the precepts of the First Amendment. *See Claiborne Hardware Co.*, 458 U.S. at 925, 102 S.Ct. at 3432.

■ Clearly, a person may always be held civilly liable for the consequences of his unlawful, violent acts. But a "massive and prolonged effort to change the social, political, and economic structure ... cannot be characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts." [16] *Id.* at 933, 102 S.Ct. at 3436. For civil liability to arise by reason of association alone, "it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Id.* at 920, 102 S.Ct. at 3429.

In the context of this action, the plaintiff has alleged robbery and extortion as the illegal aims. Consequently, the plaintiff bears the burden of proving that *each* defendant charged with conspiracy under 18 U.S.C. § 1962(d) had specifically intended to accomplish those illegal aims. The only defendants the jury could possibly find liable under this section are those twenty-five defendants who actually entered the Center and Ms. Walton and Corbett. Therefore, as to the remaining four defendants,[17] the plaintiff's § 1962(d) RICO count cannot comport with the dictates of the First Amendment as this court understands those dictates to be. With respect to those defendants, the verdict will be directed.

## III. TRESPASS CLAIMS

■ The plaintiff's first pendent claim charges each of the thirty-one remaining defendants with common law trespass to land. Amended Complaint at ¶ 88. Under Pennsylvania law, "[o]ne who intentionally enters land in the possession of another without a privilege to do so is liable ... to the possessor of the land as a trespasser...." *Kopka v. Bell Telephone Co.*, 371

---

**16.** "A court must be wary of the claim that the true color of a forest is better revealed by reptiles hidden in the weeds than by the foliage of countless freestanding trees." *NAACP v. Clai-*

*borne Hardware Co.*, 458 U.S. 886, 931, 102 S.Ct. 3409, 3435, 73 L.Ed.2d 1215 (1982) (Stevens, J.).

**17.** John Stanton, Linda Hearn, John Connor, and Pasquale Varallo.

Pa. 444, 91 A.2d 232, 235 (1952) (quoting Restatement (First) of Torts § 164 (1934)). Similarly, "one who authorizes or directs another to commit an act which constitutes a trespass to another's land is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself...." *Id.* Actions for trespass to land were created at common law to redress invasions of a person's right to the exclusive use and possession of his property. *Hennigan v. Atlantic Refining Co.,* 282 F.Supp. 667, 669 (E.D.Pa.1967) *aff'd,* 400 F.2d 857 (3d Cir.1968), *cert. denied,* 395 U.S. 904, 89 S.Ct. 1739, 23 L.Ed.2d 216 (1969). Essential to maintaining such an action is that the complainant in fact have the right to exclusive use and possession of the property at issue.

The plaintiff's trespass count is analytically complicated by the relocation of the Northeast Women's Center during the pendency of this lawsuit. Prior to June 16, 1986, the Center was located on the third floor [18] of a three-story office building at 9600 Roosevelt Boulevard in Northeast Philadelphia. Testimony during the plaintiff's case-in-chief revealed that the Center leased this office space from an uninterested third party. While at this location, the Center's offices were entered four times by a number of anti-abortion protesters. These entries occurred on December 8, 1984; August 10, 1985; October 19, 1985; and May 23, 1986. According to the testimony of the plaintiff's witnesses, these unauthorized entries, combined with the numerous other regular protest activities, prompted the Center's landlord to decline to renew the Center's lease. Consequently, the Center was forced to move.

On June 16, 1986, the Center moved into its present facility in an office building located off Comly Road in Northeast Philadelphia. This office building is situated in the southeast corner of a parcel of land approximately 350 feet long and 215 feet wide. Also within this parcel, to the west of the office building, is a branch office of Mellon Bank. The remainder of the parcel of land, constituting the substantial majority of the property, is devoted to parking spaces and "driveways" leading out onto Comly Road.

The Director of Community Relations for the Center, Kate Strausser, testified that the majority of the 350–by–215 foot parcel was purchased by Comly Road Associates from the Philadelphia Authority for Industrial Development. This deed was introduced as "P–78". A smaller, 75–by–200 foot portion of this property—the portion on which the office building housing the Northeast Women's Center now stands—was purchased by and is currently owned by L.P. Partnership. This deed was introduced as "P–79". The Northeast Women's Center leases the middle portion of this office building through an agreement with L.P. Partnership. To guard against the unauthorized entry of protestors it had experienced at 9600 Roosevelt Boulevard, the Center equipped its new offices with an elaborate security system. As of this date, there have been no unauthorized entries at the Comly Road location.

In its claim for trespass, the plaintiff seeks both retroactive relief in the form of money damages and prospective relief in the form of a permanent injunction. The claim for retroactive relief includes damages for the repair or replacement of desterilized, destroyed, or otherwise damaged medical equipment, the expenses incurred in moving the Center to its new location, and the costs of the security systems and security guards. The claim for prospective relief seeks an injunction limiting the number of protesters, restricting them to a certain location, and limiting the manner of their demonstrations. Due to the number of defendants peripherally named in this count, the court has carefully scrutinized the facts of this case in light of the elements of common law trespass.

It is clear to the court that the plaintiff has the right to exclusive use and possession of that portion of the office

---

**18.** Although the Center was principally located on the third floor, it did maintain an office in the basement level for checking in patients.

building it leased at 9600 Roosevelt Boulevard and to that portion of the office building it is now leasing from L.P. Partnership at Comly Road. The plaintiff's right to recover under common law trespass for the defendants' unauthorized entry onto all other areas of 9600 Roosevelt Boulevard or all other areas of the 350–by–215 foot Comly Road parcel is far from clear. The plaintiff may be entirely correct that the defendants' presence immediately outside its offices constitutes a trespass. The plaintiff may also be correct that the First Amendment would not shield the defendants from liability under the free speech clause. *See Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980); *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569, 92 S.Ct. 2219, 2229, 33 L.Ed.2d 131 (1972). But the plaintiff cannot, however, assert these trespass claims with respect to property it does not possess. As to any such trespass, the Northeast Women's Center is not the real party in interest.[19]

This reasoning is particularly critical with regard to the dimensions of the prospective injunctive relief the plaintiff seeks at its Comly Road location. By the plaintiff's own witness it was established that L.P. Partnership owns the office building and the property immediately surrounding the office building, and Comly Road Associates owns the remainder of the land. Neither L.P. Partnership nor Comly Road Associates is a plaintiff in this action. Thus, although the Northeast Women's Center is the proper party to raise claims for trespass to its own suite of offices, it cannot seek relief for the trespass to property it

does not possess. Irrespective of whether the plaintiff can prove that neither L.P. Partnership nor Comly Road Associates consents to the defendants' continuing presence on their land, the plaintiff's recovery—and, thus, it cause of action—is limited to land it possesses.

In view of this determination, the court concludes that only claims of trespass to the Northeast Women's Center's suite of offices may go to the jury in this case. The jury is entitled to deliberate on claims that (1) a defendant personally trespassed on the Center's property, or that (2) a defendant directed another person to trespass on the Center's property. After reviewing the plaintiff's evidence in light of this ruling, the court will grant the following defendants' motions for directed verdicts on the trespass count: John Stanton, Linda Hearn, John Connor, and Pasquale Varallo.

## IV. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIMS

█ The plaintiff's final claim is the pendent count for intentional interference with contractual relations. The plaintiff alleges that the defendants have interfered with the existing employment contracts that it maintains with its employees. To succeed on this theory under Pennsylvania law, the plaintiff must prove that the defendants (1) intentionally and improperly interfered with the performance of a contract between the Center and an employee and (2) that such interference resulted in the employee's failure to perform the contract. *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d

---

**19.** During oral argument on the motion, the plaintiff relied heavily on the posting of "No Trespassing" signs to establish the Northeast Women's Center's right to recover under trespass to property it does not possess. One such sign announced that the lessor's tenants had the right to remove trespassers from the lessor's property. From this sign, the plaintiff asserts that the Center had constructive possession of the lessor's property and that such constructive possession could sustain a trespass action on behalf of the Center.

This theory is unjustified under the law of Pennsylvania. As set forth by the Pennsylvania Supreme Court, a plaintiff may maintain a

cause of action for trespass to land of which he has possession.

> If the land entered by the trespasser is unimproved, possession will be presumed to accompany the title, and this constructive possession will support an action. If the land is improved, that fact shows that it is in the actual possession of some one. In such case the plaintiff cannot rest on his title, but must show his possession.

*Wilkinson v. Conrail*, 158 Pa. 126, 27 A. 870, 870 (1893). The property surrounding the Northeast Women's Center is improved land. Therefore, the constructive possession argument will be rejected.

1175, 1183 (1978), *appeal dismissed and cert. denied,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979) (adopting Restatement (Second) of Torts § 766 (1979)).

 A prima facie case for this tort has been stated with respect to the employment contracts the Center maintained with its previous administrator Mary Banecker and with its outgoing Director of Community Relations, Kate Strausser. The plaintiff asserts that, as a result of the defendants' activities, it was forced to outfit its facilities with a security system. For the reasons set forth in the preceding discussion of extortion, this claim will go to the jury only as against the twenty-five defendants who entered the Center and Ms. Walton and Corbett.

An order follows.

## ORDER

AND NOW, this 8th day of May, 1987, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. With respect to the plaintiff's Antitrust count, the motions for directed verdict are GRANTED AS TO ALL DEFENDANTS.

2. With respect to the plaintiff's Racketeer Influenced and Corrupt Organizations Act count the motions for directed verdict of JOHN STANTON, LINDA HEARN, JOHN CONNOR, and PASQUALE VARALLO are GRANTED. All other motions for directed verdict on this count are DENIED.

3. With respect to the plaintiff's common law trespass count the motions for directed verdict of JOHN STANTON, LINDA HEARN, JOHN CONNOR, and PASQUALE VARALLO are GRANTED. All other motions for directed verdict on this count are DENIED.

4. With respect to the plaintiff's common law intentional interference with contractual relations count the motions for directed verdict of JOHN STANTON, LINDA HEARN, JOHN CONNOR, and PASQUALE VARALLO are GRANTED. All

other motions for directed verdict on this count are DENIED.