The MARIAN BANK et al.

v.

INTERNATIONAL HARVESTER CREDIT CORPORATION et al.

Civ. A. No. 81–4941.

United States District Court, E.D. Pennsylvania.

Oct. 27, 1982.

Walter Weir, Philadelphia, Pa., for plaintiffs.

Thomas Kenworthy, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This action was tried before this court, sitting with a jury, which resulted in verdicts and judgments entered in favor of plaintiff The Marian Bank ("Bank") for $25,643.59, in favor of plaintiff William Booker ("Booker") for $64,356.41, and in favor of plaintiff B.B.M. Trucking Co., Inc. ("BBM") for $3,000.00. The jury also returned a verdict against defendant International Harvester Credit Corporation ("IHCC") on its counterclaims. Presently before the court are the defendant's motions for judgment n.o.v., for new trial, and to be excused from ordering transcripts. For the reasons which follow, we excuse the defendant from ordering the transcript, and we deny the motions of the defendant for judgment notwithstanding the verdict and for a new trial.

In May and June of 1980, the defendant International Harvester Company ("IHC") sold two trucks to Center City Lumber Company ("CCLC"), a Pennsylvania corporation owned and controlled by Leonard Pelullo. In March of 1980, the defendant IHC sold two additional trucks to another corporation owned by Pelullo, the Philadelphia Construction Company ("PCC"). These four trucks were purchased pursuant to Retail Installment Contracts and financed by the defendant IHCC, a wholly owned subsidiary of the defendant IHC. The defendant IHC applied to the Commonwealth for the certifications of title which

were issued. However, the Commonwealth rejected a claimed exemption from sales taxes for the trucks, noted that sales taxes were not paid on the trucks, and imposed tax liens on three of the certificates of title.

In June of 1981, PCC and CCLC defaulted on their obligations under the Retail Installment Contracts. The plaintiff Booker, desiring to purchase the trucks, made an agreement with Pelullo to purchase the stock of PCC, and Booker then approached the plaintiff Bank for financing.

A meeting was held on June 29, 1981 attended by Stanley and Ehinger, general partners of the plaintiff Bank, Buckshaw, a representative of the defendant IHCC, Collins, a representative of the defendant IHC, and Pelullo. It was revealed that the plaintiff Booker desired to purchase the four trucks with the plaintiff Bank providing the financing of the equity in the trucks, and with the defendant IHCC agreeing to continue the existing financing on the trucks. Buckshaw represented that after the amount past due of $25,643.59 was paid, there would be a balance due of $212,728.90.

On July 9, 1981 an agreement among all the parties was finally reached and a letter confirming the agreement was sent. The plaintiff Bank agreed to extend a loan to the plaintiff Booker to purchase the trucks and insured that $25,643.59 would be paid to the defendant IHCC to bring all four Retail Installment Contracts current. A second lien would be imposed on the trucks by the plaintiff Bank, which would follow the first lien of the defendant IHCC. The plaintiff Booker would make all future payments on the trucks at $1,000 per month, per truck. The letter of confirmation was dated July 9, 1981 and was sent by Stanley, a general partner of the plaintiff Bank, to the defendant IHCC with an endorsed check in the amount of $25,643.59 and with a request that IHCC sign the letter and return it to the plaintiff Bank. The letter also confirmed the representation that the amount due and owing on the trucks was $212,728.90. The defendant IHCC signed and returned the letter, and proceeded to deposit the check of the plaintiff Bank. At

this time also, PCC was extended a $40,-000.00 loan by the plaintiff Bank which was requested by the plaintiff Booker and which was personally guaranteed by him.

Subsequent to this agreement, the plaintiff Booker incorporated BBM and then took possession of the trucks and made repairs. It was at this time that the plaintiff Booker first learned of the tax liens. He contacted Buckshaw who told the plaintiff Booker to assume the tax obligations. When Booker indicated that he would be unable to do so, Buckshaw proposed a "friendly repossession." According to this arrangement, the defendant IHCC was to take possession of the trucks as if repossessing them, hold them for fourteen days, and then return them and transfer titles to the plaintiffs Booker and BBM, free of the tax liens. Also according to this arrangement, the only remaining required payments to be made were the $1,000 per month, per truck until the sum of $212,728.90 was paid. IHCC thereafter repossessed the trucks. At the end of the fourteen-day period arrangement, the defendant IHCC refused to return the trucks to the plaintiffs Booker and BBM under the above conditions. The plaintiffs Bank and BBM instituted this action.

During the trial, both the defendants IHC and IHCC moved for a directed verdict upon the close of the evidence. The motion of IHC was granted while the motion of IHCC was denied. Therefore, the only remaining defendant is IHCC. IHCC now moves for judgment n.o.v. and for a new trial following the jury's verdicts in favor of the plaintiffs, the Bank, Booker and BBM, and against the defendant IHCC, and against defendant IHCC on its counterclaims against PCC.

## MOTION FOR JUDGMENT N.O.V.

Rule 50(b) of the Federal Rules of Civil Procedure provides that whenever a motion for directed verdict made at the close of all evidence is denied, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. *Fed.Proc. L.Ed.* § 62:692.

■ A motion for judgment n.o.v. must be granted cautiously and sparingly, and is appropriate under very limited circumstances. *Id.* The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand. The court may not substitute its own judgment for that of the jury merely because the court may have reached a different conclusion. To grant a motion for judgment n.o.v., the court must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict. *Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1210 (3d Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). The motion "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as the proper judgment." *Woodward and Dickerson, Inc. v. Yoo Hoo Beverage Co.,* 502 F.Supp. 395, 397 (E.D.Pa.1980), quoting 5A Moore's Federal Practice § 50.07[2], at 50–77. Where there is conflicting evidence which could lead to inconsistent conclusions, a judgment n.o.v. should not be granted. *Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 540 F.2d 1171, 1178 (3d Cir.1976); 5A Moore's Federal Practice § 50.07[2]. In considering the motion, the court must view the evidence in the light most favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference. *Id.*

The jury having found for the plaintiffs in the case *sub judice,* this court must take all the evidence and all the inferences reasonably arising therefrom in the light most favorable to the plaintiffs.

The defendant's arguments are principally directed toward the claim that the evidence introduced at trial was insufficient to support the claims of both plaintiffs, the Bank and Booker. This court will consider each of the defendant's arguments in light of the plaintiffs' claims.

■ Initially, the defendant argues that there was insufficient evidence to support the claim that the plaintiff Bank suffered a loss which could be translated into recoverable damages. The defendant contends that the plaintiff Bank acted as a mere agent for the plaintiff Booker. Viewing the evidence and inferences reasonably arising in the light most favorable to the plaintiffs, this court finds that such contentions have no merit. The plaintiffs' Amended Complaint and the evidence introduced at trial indicate that the plaintiff Bank negotiated with and entered into an agreement with the defendant both in its own right and as an agent for the plaintiff Booker. The plaintiff Bank also performed its obligations in connection with the agreement, such as sending its check for $25,643.59, which defendant accepted and deposited in its account. This contract was breached. As a consequence, the plaintiff Bank suffered a loss and is entitled to recover.

■ The defendant also discusses the loans made by the plaintiff Bank to support its argument that the plaintiff Bank did not suffer a loss. The defendant contends that the loan made by the plaintiff Bank on July 14, 1981 to PCC, was repaid out of the proceeds of a loan made by the plaintiff Bank in October of 1981 to BBM, another corporation of Booker's. Therefore, the loan was fully satisfied.

For this court to accept such an argument would require the court to exalt form over substance. Testimony was adduced at trial that the note representing the indebtedness by PCC was replaced by another note in the name of BBM. Since both corporations were owned by the plaintiff Booker, the notes represent package financing prepared by the plaintiff Bank for the plaintiff Booker. There was further testimony that the loan in the amount of $25,643.59 remains outstanding, that the plaintiff Booker is unable to pay the loan either individually or through a company of his, and that the trucks do not provide a method of repayment because they have been repossessed by the defendant. Therefore, there was an abundance of evidence to support the jury finding that the plaintiff Bank suffered a loss and was entitled to recover.

■ The defendant also argues that there was insufficient evidence to support

the plaintiff Bank's claim that the defendant had breached the warranty to the plaintiffs by misrepresenting the total amount due and owing on the four trucks as $212,728.90. According to the plaintiff Bank, the defendant had failed to disclose the fact that this amount did not include the sales taxes which had not been paid when the trucks were originally sold.

Viewing the evidence in the light most favorable to the plaintiff Bank, this court concludes that there was an abundance of evidence to support the jury finding that the representation of $212,728.90 was a warranty that this was the only amount due and owing on the trucks. Both the testimony and a letter dated July 9, 1981 which was signed and returned by IHCC, were presented as evidence of this representation. Without weighing the credibility of this evidence or making any findings of its own, this court finds that there is but one conclusion as to a proper judgment, which is the same as the jury verdict.

The defendant next argues that the Bank's claim of fraudulent misrepresentation cannot be sustained because this claim was not raised in the Amended Complaint and because there was no evidence to support the claim.

■ First, this court notes that the claim was raised in the Amended Complaint and recalls the numerous conferences and arguments over the filing of the Amended Complaint which clearly put defendant on notice of the nature of plaintiff's claims. Second, this court finds, after viewing all the evidence and inferences reasonably arising concerning fraudulent representation in the light most favorable to the plaintiff, that a judgment for the plaintiff was the only reasonable conclusion which could be drawn from the evidence.

■ The defendant's next argument concerns the plaintiff's claim of fraudulent non-disclosure. The defendant argues that there was no evidence from which reasonable men could have found that the sales taxes on the trucks were unpaid as of July 9, 1981 or that any representative of defendant had knowledge that the taxes were unpaid. Citing the elements of fraud, the defendant asserts that these were not proven at trial. In summary, these elements are as follows: (1) a misrepresentation; (2) a fraudulent utterance or non-disclosure; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate result. *Neuman v. Corn Exchange National Bank & Trust Co.*, 356 Pa. 442, 450, 51 A.2d 759 (1947).

■ The defendant first argues that the element of misrepresentation did not exist. Again, viewing the evidence and inferences reasonably arising in the light most favorable to the plaintiff, this court finds that the defendant's contention has no merit. Although a representative of the defendant testified at the time of trial that he did not know about the unpaid sales taxes, the jury was free to disbelieve him and find that he did possess this knowledge. This court will not weigh the credibility of his testimony. Rather, this court views the position of the representative, has access to and experience with the accounts involved and finds that there is but one reasonable conclusion to be made; the representative was familiar with the circumstances surrounding the status of the amounts due and owing which obviously included both the amount due and owing under the Retail Installment Contracts and the amount due as sales taxes.

■ The defendant argues that the necessary element of fraudulent non-disclosure did not exist since it was "merely silent" as to the sales taxes and mere silence does not constitute fraud. It is a well-established rule that deliberate nondisclosure of a material fact amounts to culpable misrepresentation no less than an intentional false affirmation. *Neuman v. Corn Exchange National Bank and Trust Company*, 356 Pa. 442, 51 A.2d 759 (1947). In the case *sub judice*, the defendant did not disclose the full amount due and owing on the trucks. Any reasonable person would know that disclosure of the full amount was important

to the plaintiffs and likely to affect their actions.

The defendant's argument that the element of intention to deceive did not exist is also without merit. As indicated above, there was an adequate basis for the jury to find that the representative was fully aware of the unpaid taxes and, therefore, intended to deceive the plaintiffs.

Regarding the element of justifiable reliance, the defendant argues that the plaintiffs had the means to discover the existence of the unpaid taxes and tax liens, and further, that they were chargeable with knowledge which they could have discovered. The defendant also relies on 75 Pa.C. S.A. § 1106(c), a section of the Pennsylvania Vehicle Code ("Code"), for the proposition that where the facts are endorsed on the certificates of title, then adequate notice of those facts has been provided to creditors, subsequent lien holders and purchasers.

■ This court notes that the general rule is that a party is chargeable with knowledge of that which can be readily discovered. *See, Borelli v. Barthel,* 211 A.2d 11, 205 Pa.Super. 442 (1965). When this rule is applied to the case *sub judice,* a reasonable inquiry consists of either inspecting the titles or questioning the most reasonable source—the defendant. It is undisputed that the defendant held the titles to the trucks and that defendant failed to completely answer the plaintiffs' questions on the amount due and owing. It is clear, therefore, that the plaintiffs had all the knowledge which could be readily discovered and still did not know of the tax liens.

■ As to the defendant's reliance on 75 Pa.C.S.A. § 1106(c), this court finds that such reliance is misplaced. The purpose of this section of the Code is to protect the rights of a holder of a lien or encumbrance properly noted upon the certificate of title to a vehicle, in an action between such a lienholder and a subsequent creditor or purchaser disputing the validity or priority of the lien. This section was added to the Code by the Act of June 27, 1939, P.L. 1135,

so as to establish a method of creating liens on motor vehicles without the necessity of possession. *Mellon National Bank & Trust Company v. Cabin,* 177 Pa.Super. 417, 110 A.2d 888 (1955). This section was not intended to control the relations between third parties in actions not disputing the validity or priority of liens noted on a certificate of title.

This court has already indicated its judgment regarding the last element of damages. We cannot find as a matter of law that the plaintiff Bank failed to adduce sufficient facts to justify the jury's verdict that the plaintiff Bank was entitled to recover from the defendant.

Turning to the defendant's arguments regarding the claims made by the plaintiff Booker, this court notes that the defendant makes many of the arguments it previously made against the claims of the plaintiff Bank. We find these contentions meritless for the same reasons and turn to those arguments specifically regarding the plaintiff Booker.

■ The defendant argues that the amount awarded to the plaintiff Booker was reached in an undiscernable manner and was excessive. The jury awarded the amount of $25,643.59 to the plaintiff Bank which reimburses the Bank for the amount it paid the defendant. The jury awarded Booker the sum of $64,356.41. Booker had paid CCLC $14,356.41 for the equity in the trucks. He had made down payments of $34,000.00 when he purchased the trucks. Booker also had made payments of $40,-034.76 pursuant to the Retail Installment Contracts. It was proper for the jury to award Booker any portion of this $88,391.17 in payments made by him. It was also proper for the jury to consider the evidence introduced at trial that the plaintiff Booker lost profits as a result of his inability to operate the trucks due to the existence of the tax liens, and lost additional money representing the interest accruing on the loan obtained for the purchase of the trucks. Clearly, there is abundant evidence to justify the jury's award, which was neither excessive nor reached in an undiscernable manner.

The defendant next argues that the plaintiff Booker, as either a guarantor or shareholder, suffered no loss and is therefore, entitled to no award of damages. However, this court notes that the plaintiff Booker's claims do not arise out of a wrongful act committed by the creditor to the principal debtor nor arise out of a tort or a breach of contract committed against PCC. Rather, the claims arise out of a contractual relationship between the plaintiff Booker and the defendant. The plaintiff Booker negotiated and entered into an agreement with the plaintiff Bank and the defendant. Although the plaintiff Booker performed his obligations, the contract was breached by IHCC. As a consequence, the plaintiff Booker suffered losses and was entitled to recover. The jury accepted the testimony adduced on the subject of damages and reached its verdict which should stand in the absence of an indication that manifest injustice will occur.

Finally, the defendant argues that its motion for a directed verdict on the counterclaim against PCC was improperly denied because no defense was presented by PCC and because a reasonable jury could not properly find in favor of PCC in light of the evidence presented. These assertions are made in general terms, without supporting argument and without particular reference to the evidence presented or to the applicable law. In the absence of specificity, and after a review of the evidence and inferences arising made in the light most favorable to plaintiffs, this court concludes that the jury's verdict should stand.

## MOTION FOR A NEW TRIAL

■■■■ The defendant alternatively moves for a new trial pursuant to Fed.R. Civ.P. 59. Decisions to grant a new trial rest in the sound discretion of the court whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5] at 59–160. See also, *Thomas v. E.J. Korvette, Inc.,* 476 F.2d 471, 474–475 (3d Cir.1973). The court may not substitute its own judgment for that of the jury, *Marder v. Conwed Corp.,* 75 F.R.D.

48, 54 (E.D.Pa.1977), and the judge should abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. *Lind v. Schenley Industries, Inc.,* 278 F.2d 79, 80 (3d Cir.), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960).

The defendant predicates its motion for a new trial upon nine grounds. This court will discuss each of these grounds in regard to their merit.

First, the defendant contends that the verdicts concerning the claims of both plaintiffs and the counterclaim of PCC were against the weight of the evidence. As stated above in the discussion on the motion for judgment notwithstanding the verdict, the evidence supported the jury's findings since the record contains much more than a paucity of objective evidence in favor of the plaintiffs. The result reached was clearly not seriously erroneous nor did it constitute a miscarriage of justice.

Second, the defendant contends that the damages awarded to the plaintiffs were duplicative and excessive. Again, as stated in our discussion of the previous motion, the jury properly awarded to the plaintiff Bank the amount of its loan, and to Booker an amount to compensate him for the loss of payments which he made, lost profits and interest accruing on the loan.

The defendant's third contention is that the court erroneously permitted the plaintiff Booker to testify, over the defendant's objection, as to the substance of conversations with officials in Harrisburg relating to sales tax status of the trucks. This contention patently mistakes the record. A careful review of the record reveals that counsel for the defendants never made an objection to this testimony of Booker.

■■■■ The defendant's fourth contention is that the court erroneously excluded the testimony of Thompson and Bradley, representatives of the defendant, regarding a conversation with Pelullo, the original purchaser of the trucks, since this conversation was not offered for the truth of the matter asserted. To the contrary, this testimony

was offered to prove the truth of the matter since it was offered to refute the plaintiffs' evidence as to the terms of the July 9, 1981 alleged agreement between the plaintiffs and the defendant and to substitute the terms of an alleged agreement between Pelullo and the defendant. The defendant contends that Thompson and Bradley would have testified as follows:

"... that Mr. Pelullo advised Mr. Bradley that even if International Harvester Credit Corporation would not agree to the transfer of the trucks to Booker, it could not prevent him from selling the stock of his company to Booker. Mr. Pelullo further stated that the following day he would tender a certified check to bring the delinquent payments on the trucks current through the end of June, that he would deliver a document evidencing Booker's purchase of the stock of the company and he would execute a personal guarantee of the transaction."

Memorandum of International Harvester Credit Corporation in Support of Motion for New Trial, pp. 5–6. It is clear from the substance of this testimony that it was offered for the truth of it to establish the terms of an agreement between Pelullo and the defendant and an explanation of the defendant's retention of the $25,643.59 check. The substance of such an agreement cannot be proved through hearsay testimony. Therefore, the court properly excluded the testimony.

The defendant's fifth ground in support of its motion is that the court erroneously excluded the testimony of Bradley regarding a conversation with a representative from the defendant's legal department, since this was not offered for the truth of the matter asserted but was offered for Bradley's state of mind and Bradley's lack of fraudulent intent. The defendant contends that Bradley would have represented "the circumstances that Mr. Bradley obtained the authorization of the law department at World Headquarters to accept the payment and upon which Mr. Bradley authorized Mr. Thompson to accept the check." IHCC Memorandum, p. 6. Again, the testimony was offered to establish the agreement alleged by the defendant, and was properly excluded.

■ As to the assertion that this testimony would have refuted any fraudulent intent, this court finds this ground also without merit. The plaintiffs base their claims for fraud upon the following five fraudulent misrepresentations by the defendant: (1) misrepresentation of the total amount due and owing on the trucks; (2) misrepresentation that the plaintiff Bank would be granted second liens upon the trucks; (3) the failure to disclose the existence of unpaid sales taxes upon the trucks; (4) failure to disclose the existence of tax liens on the trucks, and (5) failure to disclose that the letter of July 9, 1981 did not constitute an agreement. Clearly, the excluded testimony of Bradley is totally unrelated to the first four misrepresentations. The only misrepresentation the testimony could possibly be related to is the fifth. However, consideration of the entire record and of the abundance of evidence introduced in support of the claims of fraud, as well as consideration of the probable effect of such testimony compels a conclusion that the exclusion was not a miscarriage of justice to warrant the granting of a motion for a new trial.

■ The defendant's sixth ground in support of his motion is that the court erroneously failed to instruct the jury on the plaintiffs' duty to mitigate damages. However, this contention is without merit because it was not timely complained of. Rule 51 of the Federal Rules of Civil Procedure provides in pertinent part:

"... No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Since the defendant failed to object at trial to the absence of an instruction on mitigation of damages, he is barred from raising this claim as error at this time.

■ Next, the defendant contends that the court erroneously permitted Ehinger, a

general partner of the plaintiff Bank, to testify without foundation and over the defendant's objection to events which took place, if at all, when he was on vacation and out of which he had no personal knowledge. This contention is made in general terms, without supporting argument and without particular reference to the testimony given. In the absence of specificity, this court cannot find that a miscarriage of justice was committed to warrant the granting of a motion for a new trial.

The eighth ground for the motion for a new trial states that if upon consideration of the defendant's motion for n.o.v. "the court is of the opinion that there was sufficient evidence to allow the case to go to the jury on either the fraud claim or the breach of contract claim, but not both, then a new trial is mandated." The defendants assert that the plaintiffs "did not plead these separate claims in different counts and only a general verdict on all counts was returned by the jury." Therefore, the defendants conclude that the court "can only speculate as to whether the verdict was predicated on the fraud or contract claim." This contention is meritless. The jury heard and considered all the evidence without speculation, and then reached a verdict. If the verdict can be sustained on any theory after such consideration, then it should not be set aside.

Lastly, the defendants contend that the court erroneously directed a verdict against the defendant as to Count II of its Counterclaim. Again, this contention is made in general terms lacking supporting argument and specificity and is not one upon which a motion for a new trial should be granted.

## MOTION FOR LEAVE TO BE EXCUSED FROM ORDERING TRANSCRIPT PENDING DISPOSITION OF MOTION FOR JUDGMENT N.O.V.

Both the plaintiffs and the defendant advanced several reasons in their memoranda on the defendant's motions. In view of the nature and substance of the stated reasons and in order to expedite the disposition of this matter, this court concludes that the defendant should be excused from ordering transcripts.