## NORTHEAST WOMEN'S CENTER, INC.

v.

Michael McMONAGLE, Dennis Sadler, Deborah Baker, Thomas Herlihy, Anne Knorr, Robert Moran, Joseph P. Wall, Roland Markum, Howard Walton, Henry Tenaglio, Stephanie Morello, Annemarie Breen, Ellen Jones, Susan Silcox, Paul C. Armes, Walter G. Gies, John J. O'Brien, Patricia Walton, Kathy Long, Helen Gaydos, Donna Andracavage, Juan Guerra, Margaret Caponi, Mary Byrne, Linda Corbett, Thomas McIlhenny, and Patricia McNamara.

Civ. A. No. 85–4845.

United States District Court, E.D. Pennsylvania.

March 31, 1988.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the court is the motion of the defendants for judgment notwithstanding the verdict pursuant to Fed.R.Civ. P. 50(b), or alternatively, a new trial pursuant to Fed.R.Civ.P. 59. At this juncture, the circumstances from which this action arose are well published. Plaintiff, the Northeast Women's Center, Inc., is a Penn-

sylvania corporation engaged in the business of providing pregnancy testing, gynecological care, counseling, and abortion procedures. Defendants are pro-life activists who have protested vigorously against abortion both in front of and outside of the Center.

Asserting injury as a result of defendants' activities, the plaintiff brought this civil action seeking money damages and injunctive relief under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 et seq., 15; the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1964(c), and the common law torts of trespass and intentional interference with contractual relations.

At the close of the plaintiff's case, this court directed the verdict on the plaintiff's anti-trust count. *Northeast Women's Center, Inc. v. McMonagle*, 670 F.Supp. 1300 (E.D.Pa.1987). The remaining claims were put to a seven-person jury.

Following four days of deliberations, the jury returned its verdict, finding all twenty-seven remaining defendants liable under RICO and assessed $887.00 in damages. The jury found twenty-four of the defendants liable for trespass and assessed $42,-087.95 in compensatory damages and $48,-000.00 in punitive damages. Three defendants were found to have intentionally interfered with plaintiff's employee contracts, but no award was made since the jury found that the Center had sustained no proximate loss as a result. Based on the jury's answers to the Special Interrogatories, the court entered judgment on the verdict on June 8, 1987 for plaintiff against all defendants in the amount of $2,661.00 for a violation of RICO,[1] against twenty-four defendants in the amount of $42,-087.95 for trespass, and against three defendants for the intentional interference with a contract, but without money damages awarded. The awardance of punitive damages was set aside by this court, for the reasons set forth in its Memorandum and Order, filed June 8, 1987. *Northeast*

---

1. The jury's verdict of $887.00 as to the RICO claim was trebled as provided under 18 U.S.C. § 1964(c).

*Women's Center, Inc. v. McMonagle,* 665
F.Supp. 1147 (E.D.Pa.1987).

Presently the court turns to the resolution of the defendants' motions for judgment notwithstanding the verdict or in the alternative, for a new trial, pursuant to Rule 50(b) and Rule 59 of the Federal Rules of Civil Procedure. Since all defendants join in all cited grounds for the purposes of these post-trial motions, this court will consolidate its Memorandum and Order to apply equally to each defendant.

*Standards of Review*

It is well settled that "the standard for granting a judgment notwithstanding the verdict is precisely the same as the standard for directing the verdict. The motion for judgment can be granted only if the motion for directed verdict should have been granted." 9 Wright and Miller, *Federal Practice and Procedure* ch. 7 § 2537.

A motion for judgment N.O.V. must be granted cautiously and sparingly, and is appropriate under very limited circumstances. The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand.

> [t]o grant a motion for judgment N.O.V., the court must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict. The motion 'may be granted only when without weighing the evidence, there can be but one reasonable conclusion as the proper judgment.' Where there is conflicting evidence which could lead to inconsistent conclusions, a judgment N.O. V. should not be granted. In considering the motion, the court must view the evidence in the light most favorable to the party against whom the motion is made....

*Marian Bank v. Intern. Harvester Credit Corp.,* 550 F.Supp. 456, 460 (E.D.Pa.1982) *aff'd* 725 F.2d 669 (3d Cir.1983) (citations omitted).

 Defendants have moved for a new trial on numerous grounds. Although Fed. R.Civ.P. 59 does not enumerate the grounds for a new trial, the following have been recognized as general grounds for a new trial: the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions. 11 C. Wright & Miller, *Federal Practice and Procedure* § 2805 (1971). "A new trial motion on the ground that the verdict is against the weight of the evidence is to be distinguished from a motion for a ... judgment notwithstanding the verdict which raises the legal sufficiency of the evidence." *Rose Hall LTD. v. Chase Manhattan Overseas Banking Corp.,* 576 F.Supp. 107, 124 (D.Del.1983) *aff'd* 740 F.2d 958 (3d Cir. 1984). The Third Circuit enunciated the test as follows:

> [S]ince the credibility of witnesses is peculiarly for the jury, it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict. The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts, and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been, then it is his duty to set the verdict aside; otherwise not.

*Lind v. Schenley Industries, Inc.,* 278 F.2d 79, 89 (3d Cir.1960), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960) (*quoting* 6 J. Moore, *Moore's Federal Practice,* (2d ed. p. 3819).

## I. PRE–TRIAL RULINGS

### A. *Preclusion of Justification Defense*

 In this motion for a new trial, defendants reassert their objection to this court's Order of February 12, 1987 which granted plaintiff's motion in limine to preclude evidence of justification or motive as a legal defense to defendants' actions. In the court's Memorandum and Order, the court held that defendants' moral beliefs on

the issue of abortion would not provide a legal right to unlawfully damage plaintiff's property. *See Northeast Women's Center, Inc. v. McMonagle,* No. 85–4845, slip op. at 11–18 (E.D.Pa. February 12, 1987) [available on WESTLAW, 1987 WL 6666]. Defendants' counsel, in the opening statement to the jury was permitted to explain the circumstances surrounding the defendants' presence in the plaintiff's property. Counsel was directed not to argue or imply to the jury, in either opening statements or closing argument, that the defendants' beliefs afforded them any type of legal justification defense.

This court did not, as defendants contend, "prohibit testimony of motive and/or intent". Defendants' Supplemental Post–Verdict Motions, filed 12/1/87, (Docket Entry 252, p. 36). The Order of the Court expressly stated that such testimony or evidence could not be extracted or introduced absent a *prior demonstration* of relevance. Defendants do not point to any ruling at trial denying them an opportunity to demonstrate the relevance of any proposed evidence or testimony of motive and/or intent. Therefore, I find defendants' contention without merit.

Secondly, it was stipulated between all parties that the defendants' actions were motivated by their moral and/or religious beliefs regarding abortion. The jury was apprised of the reasons underlying defendants' presence and activities at plaintiff's property and was fully instructed on defendants' constitutional rights and privileges in pursuing their protests. There is no question that the jury was apprised of the tenacity of which defendants hold their views on abortion.

B. *Denial of a Stay*

■ Defendants argue that this court's pretrial denial of their motion for a stay of the proceedings pending the outcome of related state criminal prosecutions was error. To the extent that this court fully addressed this issue in its Memorandum and Order of February 12, 1987, and seeing no error in its prior ruling, defendants' motion for a new trial on this basis is denied. *See Northeast Women's Center, Inc. v. McMonagle,* No. 85–4845, slip op. at 21–22 (E.D.Pa. February 12, 1987).

Furthermore, defendants have not shown that they were at all prejudiced by the court's denial of the stay at trial and plaintiff's reference to defendants' silence in not taking the stand in their own defense. The defendants elected not to take the stand and invoke their Fifth Amendment right against self-incrimination. Any finding that the defendants were prejudiced by this court's ruling denying the stay due to defendants' rights against self-incrimination would be pure speculation.[2]

C. *Names of Clients*

Defendants aver that this court erred by failing to order the release of the names and addresses of plaintiff's clients on the dates the defendants committed the alleged unlawful acts. The resolution of defendants' motion was referred to the Magistrate, who issued an Order on November 7, 1986, denying defendants' access to this information. Upon objection by defendants, this court reviewed the findings of the Magistrate on this issue and found that the Magistrate's preclusion of all such evidence was overbroad. By Order of this court, defendants were permitted to discover the city and state of domicile for each patient encompassed in defendants interrogatories on this issue. *See Northeast Women's Center, Inc. v. McMonagle,* No. 85–4845, slip op. (E.D.Pa. February 7, 1987) [Available on WESTLAW 1987 WL 6666]. Finding no valid reason to reconsider this ruling, defendants' motion for a new trial on this issue is denied.

This court notes that defendants make no showing of prejudice from this court's Order or how it prevented defendants from presenting a proper defense.

---

**2.** Two defendants did testify and chose not to invoke their Fifth Amendment right, defendants

Corbett and McMonagle.

D. *Denial of Defendants' Protective Order*

■ Defendants assert that this court erred in its pretrial refusal to issue a protective order for the records of the Pro-Life Coalition of Southeast Pennsylvania, a nonparty, stating that the use and admission of this evidence was highly prejudicial to all defendants. Defendants do not state why the evidence was "highly prejudicial".

This court's Order of July 29, 1986 addressed plaintiff's motion to compel the discovery of and defendants motion for a protective order regarding the discovery of the fundraising, expenditure and corporate records of the Coalition and of any other anti-abortion organizations with which defendant Michael McMonagle has been affiliated with since January 1981. *See Northeast Women's Center, Inc. v. McMonagle,* slip op. (E.D.Pa. July 29, 1986) [Available on WESTLAW, 1986 WL 8341]. Pursuant to Fed.R.Civ.P. 26(b), this court stated, *inter alia,* that such materials as to defendant McMonagle, may assist plaintiff in showing proof of the planning or organization of the predicate offenses and/or offenses constituting the alleged state law violations. The court did not rule that the materials were to be admitted—plaintiffs were required to prove relevance, as in any case.

At trial, plaintiff sought to introduce minutes of the Board of Directors meeting of the Coalition. Defense counsel duly objected as to relevance. Plaintiff offered records for the purpose of showing that: (a) a number of the defendants were present at the meetings; (b) documents were signed by a defendant on behalf of the Coalition; (c) fund-raising letters sent by the Coalition were signed by a defendant regarding the protest activities of the Coalition which mentions defendants' activities at the plaintiff's place of business (N.T. 2–80–2–93.) Upon a proper showing of relevance to this action, this court admitted the documents into evidence. I find no error in the ruling. Therefore, defendants motion for a new trial on this basis is denied.

## II. TRIAL RULINGS

A. Defendants assert that this court erred in denying defendants' motion for a mistrial after the giving of an illustrative hypothetical instruction. This court is unable to respond to defendants' assertions because they have failed to state where in the record or what day in the trial this instruction was given. Although this court has diligently searched the trial transcripts to find other evidentiary objections the defendants cite as a basis for a new trial, the lengthy review necessary to respond to defendants' contention is not this court's responsibility. This court recognizes that defendants' preliminary post-trial motions were submitted before the transcripts were available, but defendants have had several months in which to supplement these objections with the proper and necessary cites to the official record. Therefore, this court will deny defendants' motion for a new trial on this basis.

■ B. Defendants claim that the court erred when it refused defendants' requests to declare a mistrial and/or poll the jury due to allegedly prejudicial remarks made by plaintiff's counsel in his opening statement to the jury. Counsel for Plaintiff made the following remarks in his opening statement to the jury: "Judge Kelly has given you a very good outline of what the legal dispute is, but I would like to talk to you a little bit about what this case is about in another sense and I think that when you hear the evidence, you will find out what this case is about, is really about tolerance. Tolerance for different people's religious beliefs and tolerance for different people's political beliefs." (N.T. 2–39.)

Plaintiff's counsel then proceeded to discuss the right of the American people to be free to subscribe to any religious belief they choose, the tolerance other Americans have for that choice, and the lack of tolerance of the defendants for the view of others on the issue of abortion rights. (N.T. 2–39/2–42).

After Mr. Tiryak finished his statement, the court recessed for lunch, during which a juror expressed fears that she could not be fair in this case because of her Catholic

beliefs and her personal views on abortion. At this point, defendants objected to plaintiff's opening statement. (N.T. 2–50) After a hearing and an examination of the juror, the juror was excused. (N.T.2–48/2–52) After argument, this court decided that a curative instruction was needed, and was given. (N.T.2–60/2–61) Opposing counsel, in their opening remarks, took the opportunity to explain further that the case was not about a lack of tolerance for others' religious beliefs. (N.T.2–78/ 2–80)

A new trial may be ordered where counsel engaged in improper conduct which had a prejudicial effect on the jury. *See Draper v. Airco, Inc.*, 580 F.2d 91 (3d Cir.1978). The appropriate inquiry is whether there is a "reasonable probability" that the jury's verdict has been influenced by the improper conduct of counsel. *Commercial Credit Business Loans, Inc. v. Martin*, 590 F.Supp. 328, 330 n. 2 (E.D.Pa.1984), *quoting Draper*, 580 F.2d at 97. Due to the curative instructions of this court after the prejudicial remarks, and indeed, all throughout this trial, and the opportunity for rebuttal of defense counsel, I do not feel that there is a "reasonable probability" that the jury's verdict was improperly influenced by the remarks and, therefore, a new trial will be denied on this basis.

C. Defendants aver that this court erred because it "barred defendants from calling witnesses to testify in mitigation to the asserted [trespass] damages". More specifically, defendants state that this court barred the testimony of witnesses Pat Soda and O'Brien. Such testimony was allegedly offered to disprove plaintiff's claim that security guards were hired solely because of defendants' actions. There is no merit to defendants' assigned "error".

This court never "prohibited" defendants from introducing evidence that plaintiff's actions as to the perceived security needs of the clinic were not solely the result of the actions of the defendants. As to the offered testimony of Mr. O'Brien, the court found that the substance of the proposed testimony was double hearsay, and not the competent testimony of a witness. (N.T. 12–93) Mr. O'Brien was permitted to testify as to his personal knowledge of the prayer vigils and protests outside the clinic at 9600 Roosevelt Boulevard. (N.T. 12–94)

As to the offered testimony of Pat Soda, a counsel for the defense, Mr. Short, stated at trial that Ms. Soda was to be questioned on the limited issue as to whether there were any protests made before a hearing of the Zoning Board concerning security concerns at the clinic. Mr. Short stated that Ms. Soda's testimony was offered as to

[a] limited subject that I developed with Ms. Ryder about the protestants claim or representations before the zoning board, demanding security. It does not intend to evoke hearsay—maybe it won't be hearsay of Ms. Ryder or Ms. Ryder's response. It's for the limited purpose of the fact that there were protests made of security and it would create the inference what was brought out on cross-examination was true. Ms. Ryder's answers to my questions on cross examination, which I don't remember. I don't remember. It goes to damages.

(N.T. 12–65)

As far as the offer of proof went, Mr. Short insisted that Ms. Soda's testimony was offered to impeach the testimony of Ms. Ryder. Ms. Ryder, a witness for plaintiff, was cross-examined by Mr. Short as to the substance of a zoning hearing held on an application for the new site of the clinic.

Ms. Ryder repeatedly stated on cross-examination that she did not remember what she might have testified to at that hearing as to the concerns of future neighbors as to vandalism of the clinic. (N.T. 10–52) Overruling an objection by plaintiff, this court allowed cross-examination on the issue of security for the clinic since it was relevant to whether the clinic needed security for reasons other than the actions of the protestors. (N.T. 10–52) In fact, Mr. Short cross-examined Ms. Ryder extensively as to whether the damages claimed as security expenses by plaintiff were attributable solely to the protestors and the reason for the move. (N.T. 10–52 up to 64) Testimony as to the previous incidents of

vandalism was adduced. (N.T. 10–52; 10–58)

The transcript of the hearing was available in order to impeach the credibility of Ms. Ryder's answers on cross-examination. Mr. Short declined to make use of it. Mr. Short repeated his assertions that the testimony of Ms. Soda was for the sole purpose of impeaching the credibility of Ms. Ryder as to her failure to recollect any discussions about security needed for purposes other than keeping out the protestors. (N.T. 12–67) On the basis of Mr. Short's assertions, this court properly disallowed the testimony of Ms. Soda for impeachment purposes.

## III. EXTORTION

The court gave the following instructions to the jury as to extortion:

> Under the law, a person is guilty of extortion if he induces his victim to part with property through the use of fear and doing so adversely effects interstate commerce. A person is guilty of extortion not only for completed extortions, but for attempted extortions and conspiracy to attempt extortions as well. The law says a person is guilty of extortion whether he induces his victim to part with property. We don't mean jewelry or a car, personal property, the word 'property' also denotes intangible property. Property interest in something, such as the right to make a business decision free from wrongly imposed outside pressures.

> Plaintiff claims the defendants, through the use of fear as instilled by their allegedly illegal protest activity, attempted and induce:
> 1. The Center
> 2. The employees.
> 3. Its patients to part with the intangible property interests.

> Specifically, defendants are charged with attempting and conspiring to extort from the Center its property interest in continuing to provide abortion services from its employees, their property interest in continuing their employment with the Center and from the patients, their property interest in entering into a contractual relationship with the Center.

> Now, as I told you at the beginning of this trial, the defendants' activities reflect their views opposing the plaintiff's choice of business. In other words, there is no question that the defendants, most, if not all of them, oppose abortion activities at the Center.
> [Instructions on First Amendment right to express their views.]

> Forceful, unauthorized entry on another's property is not constitutionally protected. If you find any of the defendants by entering the Center's property without authorization or by otherwise wrongfully preventing the Center from operating, induced or attempted to induce either the Center or its employees or its patients to part with property as a result of fear, you may find that those defendants are liable for extortion.

N.T. 14–19 through 14–22. Defendants assign the following points of error to this jury instruction.

1. Defendants argue that the definition of extortion given to the jury is actually the definition of trespass. This objection is without foundation. The instruction clearly states that the commission of an extortionate act involves not only an unauthorized entry onto plaintiff's property, but also an intent to induce the Center, its employees or its patients to part with property through the use of fear.

2. Defendants assert that plaintiff had no standing to assert injuries from the extortion of its employees.

 This particular issue was previously addressed by this court in its Bench Opinion of May 8, 1987, *see Northeast Women's Center v. McMonagle,* 670 F.Supp. 1300, 1307 n. 11 (E.D.Pa.1987). The court found that the language of the RICO statute makes no requirement that the plaintiff be the victim of the predicate acts so long as the plaintiff is injured as a result of the acts. I find that this interpretation of the RICO statute is controlling and therefore defendants' objections to the charge on this basis is denied.

3. Defendants' third assignment of error is more troubling. Defendants assert error in the court's instructions that a person is guilty of extortion if they find any of the defendants "conspired to attempt extortion" (N.T./14–20) in that a conspiracy to attempt a crime is a double inchoate crime and therefore no crime at all.

Upon a thoughtful review of the transcript, this court duly recognizes the inadvertent error of using the term "attempt" instead of "commit" to the instruction on "conspiracy to commit extortion" and attributes it to oversight and a misreading of the instruction at hand. However, I find that the mistake was not so prejudicial as to warrant defendants the right to a new trial.

Firstly, this court points out that this assignment of error was fully correctable if defendants had followed Fed.R.Civ.P. 51. The object of the rule is to afford the trial judge an opportunity upon second thought, and before it is too late, to correct any inadvertent or erroneous failure to charge. 9 Wright & Miller *Federal Practice and Procedure* ch. 7 § 2551, *citing from Marshall v. Nugent,* 222 F.2d 604, 615 (1st Cir.1955). The necessity of a retrial is avoided when, by design or through sheer neglect, the losing party fails to make a proper objection at the proper time. 9 Wright and Miller, *Federal Practice and Procedure* ch. 7 § 2551. If defendants had objected at the proper time, a clarifying instruction could have been given, and fourteen trial days would not have been jeopardized. Therefore, I find that defendants have waived this objection.

Alternatively, the addition of the word "attempt" in the court's charge on conspiracy to commit extortion, looking at the instructions in the entirety, as we must, is not so highly prejudicial as to warrant a new trial. The court gave instructions at length on the composition of a conspiracy and the necessity of an overt act. The interrogatories mandated a finding of an overt act. The instructions given on the whole as to what is needed to find extortion and the examples given therein, made the proper elements clear. The charge as a whole correctly charged the jury that extortion as defined under the Hobbs Act includes attempted extortion and conspiracy to commit extortion. Specifically, this court repeatedly gave instructions on extortion as encompassing attempting *and* conspiring to extort. (N.T. 14–20) Therefore, defendants are not entitled to a new trial on this basis.

4. Defendants assert that this court improperly charged the jury as to attempted extortion and conspiracy to commit extortion since plaintiff never pleaded these charges as predicate acts in its complaint. I find this objection baseless for two reasons.

Firstly, I find defendants' objection to the charge on this point comes too late. At no time throughout the trial did defendants object to plaintiff's introduction of evidence as to the two acts. Secondly, defendant cannot be heard at this date to claim ignorance of plaintiff's theory of the necessary RICO predicate acts.

It cannot be reasonably believed that defendants lacked notice at the time the instructions were given as to these two allegations. As early as December 22, 1986 defendants filed a motion for summary judgment which asserted as a basis for judgment that "[p]laintiff has no standing to allege inchoate crimes of conspiracy and attempt as there would be no concomitant injury to its business or property." *See* Defendants Motion for Summary Judgment on Plaintiff's RICO Claim. Since the entire purpose of a pleading is to give notice to the opposing party, and since defendants knew that the plaintiff was relying on the predicate acts of attempted extortion and conspiracy to commit extortion, defendants' motion for a new trial on this basis is denied.

5. Defendants claim that the court erred by instructing the jury that a conspiracy to commit extortion or attempted extortion may be proper predicate offenses under RICO, since, by definition, the required impact on plaintiffs' business and property is absent. This court disagrees. Sufficient evidence was adduced at trial and the jury so found that plaintiffs' property and busi-

ness was harmed due to the actions of the defendants—whether the actions go under the label of actual extortion, attempted extortion, or conspiracy to commit extortion. If defendants' assertion was correct, innocent parties would have to be completely driven out of business in order to collect damages under RICO, rather than obtaining relief from, and damages for the actions of violators when they are ongoing and continuous. Interpreting the law as defendants assert would reward them for their valiant but unsuccessful attempts. Therefore, defendants will not be granted a new trial on this basis.

■■ 6. Defendants claim that the court erred by instructing the jury that the violation of plaintiff's intangible right to conduct business is "property" that is capable of extortion, and cite the recent Supreme Court case of *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

The court previously addressed defendants' argument as to the applicability of extortion under the Hobbs Act of intangible property rights. *See Northeast Women's Center v. McMonagle*, 670 F.Supp. 1300 (E.D.Pa.1987). For Hobbs Act purposes, the term "property" includes intangible property interests such as the right to make business decisions free from wrongfully imposed outside pressures. The court based this finding on the Third Circuit opin-

ion of *United States v. Local 560 of the International Brotherhood of Teamsters*, 780 F.2d 267, 290 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986).

Upon a careful review of the recent Supreme Court precedent of *McNally*, and a subsequent interpretation of that ruling in the Supreme Court decision in *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), I find that the Third Circuit decision in *Local 560* is still controlling as to the applicability of the Hobbs act for the extortion of intangible property rights such as those presented in this case.[3]

### 7. *Injury to Business or Property*

■■ Defendants assert that the court erred in denying their motion for a directed verdict on the basis that plaintiff failed to prove that they were injured in their business or property within the meaning of the RICO act.

Section 1964(c) provides that "any person injured in his business or property ... may sue therefore...." A plaintiff seeking recovery under RICO must allege injury "in his business or property" cause by violation of the Act. 18 U.S.C.A. § 1964.

In this case, plaintiff alleged and presented evidence of two distinct injuries—physical injury to its property and injury to its business because it was forced

---

**3.** The Supreme Court held in *McNally v. United States* that the mail fraud statute, (18 U.S.C. § 1341) does not reach "schemes to defraud citizens of their intangible rights to honest and impartial government." *McNally*, 483 U.S. at ——, 107 S.Ct. at 2879, and that the statute is "limited in scope to the protection of property rights". *McNally*, 483 U.S., at ——, 107 S.Ct. at 2881. The Supreme Court subsequently limited its holding in *McNally* in *Carpenter*. The "intangible property right" asserted in *Carpenter* was the Wall Street Journal's interest in the prepublication confidentiality of their daily column "Heard on the Street" which discussed information on selected stocks. In ruling that *McNally* did not limit the scope of § 1341 to tangible as distinguished from intangible property rights, the Court stated that the intangible property right asserted by the Journal was not as "ethereal" as the intangible right asserted in *McNally*. *Carpenter*, —— U.S. ——, 108 S.Ct. 316 at 320 (1987).

"The Journal ... was defrauded of much more than its contractual right to [its employees'] honest and faithful service, an interest too ethereal in itself to fall within the protection of the mail fraud statute, which 'had its origin in the desire to protect individual property rights'". *Carpenter* 108 S.Ct. at 320.

The Court held that the "intangible nature of the Journal's right to its own confidential business information does not make it any less 'property' protected by the mail and wire fraud statutes." *Carpenter* 108 S.Ct. at 320 at 4009.

Therefore, assuming the "property" protected by the mail fraud statute and the Hobbs Act is identical, plaintiff's intangible right to make business decisions free from wrongfully imposed outside pressures is not so "ethereal" as to come under the holding of *McNally*, but is a widely recognized individual property right similar to that found sufficient in *Carpenter*.

to spend more money to maintain its operations in the face of defendants extortionate acts. The jury found that plaintiff proved by a preponderance of the evidence that it suffered an injury to its business or property as a proximate result of the racketeering activity of defendants amounting to $887.00. Therefore, I will deny defendants' motion on this ground.

## IV. MOTION FOR JNOV OF DEFENDANT LINDA CORBETT

The jury found defendant Corbett liable under § 1962(d), for conspiracy to violate the provisions of the RICO Act. Section 1962(d) provides:

It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section....

Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

■■■■ To prove conspiracy under section 1962(d), plaintiff must prove by a preponderance of the evidence that defendant Corbett agreed to the substantive subsection (c) RICO offense or that defendant Corbett agreed to participate in the conduct of the enterprise's activities through the commission of predicate offenses. Proof merely of agreement to commit the predicate acts is insufficient. Proof merely to participate in the enterprise is insufficient. *United States v. DiGilio*, 667 F.Supp. 191, 194 (D.N.J.1987), *citing United States v. Riccobene*, 709 F.2d 214 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed. 2d 145 (1983). To be found liable of RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not personally agree to commit personally those acts. *The Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1266 (3d Cir.1987); *United States v. Adams*, 759 F.2d 1099 (3d Cir.), *cert. denied*, 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985).

■■■■ Proof of an agreement in a RICO proceeding may be established by circumstantial evidence to the same extent permitted in traditional conspiracy cases. It is well established that one conspirator need not know the identities of all his co-conspirators, nor be aware of all the details of the conspiracy in order to be found to have agreed to participate in it. *Riccobene*, 709 F.2d at 225; *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

This court correctly charged the jury that in order to find that a defendant became a member of a conspiracy, defendant must have knowingly and intentionally participated in the conspiracy. Mere knowledge by a defendant of the existence of a conspiracy or of any illegal act on the part of an alleged co-conspirator is not sufficient to establish his membership in a conspiracy. (N.T. 14–27) Further, the court expressly stated that "You may also find that [the defendant] agreed to participate in the affairs of the enterprise through a pattern of racketeering activity if you find that he personally agreed to commit two or more racketeering acts to further the affairs and you need only find he agreed to commit these acts. You don't have to find that he in fact actually committed those acts." (N.T. 14–29) The court carefully cautioned the jury that "mere association" with one or more co-conspirators does not make a person a member of a conspiracy. (N.T. 14–29)

■■■■ Viewing the record in the light most favorable to plaintiff, I find that the evidence was insufficient as a matter of law to hold defendant Corbett liable under Section 1962(d). Namely, no evidence was presented as to the existence of any agreement whereby Ms. Corbett would conduct or participate in the activities of the enterprise through the commission of predicate offenses as defined under RICO.

The sole evidence plaintiff presented to support a claim against Ms. Corbett was

presented on videotape. Ms. Corbett was shown to be present on the parking lot in front of plaintiff's clinic at certain times voicing her objections to plaintiff's provided services. She was shown participating in the "blockading" of an entrance onto plaintiff's property, and standing in front of a clinic physician's car.

In cases proceeding under Section 1962(d), "[t]he key element is proof that the various crimes were performed in order to assist the enterprises' involvement in *corrupt* endeavors." *United States v. Riccobene*, 709 F.2d at 224, *quoting* Blakely and Goldstock, '*On the Waterfront': RICO and Labor Racketeering*, 17 Am.Crim.L. Rev. 341, 360–62 (1980) (emphasis added). There is no dispute that no evidence was presented that would suggest that Ms. Corbett committed any extortionate acts—the predicate offense the jury found the enterprise committed. Even if it could be said that defendant Corbett acted along with members of the enterprise at certain times, there was no evidence from which a jury could reasonably infer that she acted in furtherance of its extortionate goals rather that its organized protests.

Furthermore, no evidence was adduced at trial from which the jury could have even inferred that an implicit or actual *agreement* existed between Corbett and members of the enterprise whereby Corbett would conduct or participate in the conduct of the enterprises' activities. The most that could be inferred from the record is that Corbett may have agreed to participate in the constitutionally protected protest activities sponsored by members of the "enterprise", but not the extortionate goals of the enterprise. Therefore, this court will grant the motion for judgment notwithstanding the verdict of defendant Corbett.

## V. TRESPASS CLAIM

█ In their answers to Special Interrogatories, Section II, the jury found that twenty-four defendants intentionally entered land in the possession of the plaintiff without privilege to do so, or directed another to so enter the property. As a proximate result of the unauthorized entries, plaintiff suffered an injury to its business or property in the amount of $42,974.00. Since $887.00 of this amount had been awarded to plaintiff under the RICO claim, this amount was reduced to $42,087.95 to avoid a duplicative recovery.

Defendants Long and Baker seek a judgment notwithstanding the verdict on the basis that there was no evidence that they entered the plaintiff's property. To the extent that this court has found that the plaintiff produced sufficient evidence to withstand a directed verdict as to these two defendants, defendants' motion is denied. *See Northeast Women's Center v. McMonagle*, 670 F.Supp. 1300 (E.D.Pa.1987).

Defendants contend that this court erred by permitting the jury to award plaintiff damages for injury to its business as well as injury to its property under the trespass claim. Twelve defendants state that August 10, 1985 is the only date that damage to either personal or real property of the plaintiff occurred.[4] Since there was no evidence that these defendants trespassed on that date, they should be assessed only nominal damages. Ten defendants admit that evidence was presented as to their presence in plaintiff's property on August 10, 1985, but submit that they should only have to pay for the actual damage to plaintiff's real property, not for any injury to plaintiff's business.[5] Defendants submit that the only applicable damage presented was the damage to plaintiff's equipment which, defendants aver, is represented by the $887.00 figure. The balance of the award represents the cost of security guards which plaintiff hired to keep defendants from trespassing. *See* Testimony of Ardis Ryder, N.T. 10–3.

---

4. These defendants are: Donna Andracavage, Annemarie Breen, Mary Byrne, Margaret Caponi, Juan Guerra, Thomas Herlihy, Anne Knorr, Thomas McIlhenny, Michael McMonagle, Patricia McNamara, Robert Moran, and Dennis Sadler.

5. These defendants are: Paul Armes, Walter Gies, Ellen Jones, Roland Markum, Stephanie Morello, John O'Brien, Susan Silcox, Henry Tenaglio, Joseph Wall and Howard Walton.

Applying Pennsylvania law, the Pennsylvania Supreme Court stated:

> The authorities are clear to the effect that where the complaint is for trespass to land the trespasser becomes liable not only for personal injuries resulting directly and proximately from the trespass but also for those which are indirect and consequential.

*Kopka v. Bell Telephone Co. of PA.*, 371 Pa. 444, 451, 91 A.2d 232 (1952). The Pennsylvania Supreme Court pronouncement follows the general rule in regards to tortfeasors in general; that the trespasser is responsible in damages for all injurious consequences flowing from his trespass which are the natural and proximate result of his conduct. *See* 75 Am.Jur.2d, Trespass, Section 52. This court sees no valid reason why a trespasser could not be held liable for injuries to his or her business which are properly found by a jury to be the proximate cause of the trespass. If plaintiff's alleged injuries to business were not the consequence of defendants actions, the jury would have found that they were not the proximate cause of defendants' actions. Plaintiff's injuries as alleged and proven were not unduly indirect or remote from defendants' trespass. Therefore, defendants' motion on this ground is denied.

An order follows.

## ORDER

AND NOW, this 31st day of March, 1988, upon consideration of defendants' motion for judgment notwithstanding the verdict, or alternatively, for a new trial, and the responses thereto, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. The motion of defendant Linda Corbett for judgment notwithstanding the verdict is GRANTED. Judgment is entered in favor of defendant Linda Corbett and against plaintiff Northeast Women's Center, Inc.

2. The motion of all other named defendants for judgment notwithstanding the verdict, or in the alternative, motion for a new trial is DENIED.